CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

5/13/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| FOREST LAWTON, | ) | |
| | ) | Civil Action No. 7:26-cv-00049 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VOLVO GROUP NORTH AMERICA, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |

Plaintiff Forest Lawton ("Lawton") brought this action against his former employer, Defendant Volvo Group North America, LLC ("Volvo"), after he was fired from his position as a Production Supervisor. Before he was fired, Lawton reached out to Volvo's HR/Labor Relations and challenged his direct supervisor's decision to deny a pregnancy-related accommodation for a pregnant team member. Shortly thereafter, Lawton was placed on a Plan of Improvement ("PIP") before he was terminated altogether. He alleges that these adverse employment actions occurred because he reported what he believed to be violations of federal and state law and opposed his supervisor's refusal to provide a pregnancy-related accommodation. Lawton brought a total of ten causes of action against Volvo in the Pulaski County Circuit Court. Following removal to this court, Volvo filed a partial motion to dismiss challenging only Count X of Lawton's amended complaint: retaliation in violation of the Virginia Human Rights Act. For the reasons discussed below, the court will deny Volvo's motion.

## I.   BACKGROUND

The facts below are taken from Lawton's amended complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Lawton was employed as a Supervisor at Volvo's New River Valley Assembly Plant in Dublin, Virginia, for 20 years and worked in at least six of its manufacturing areas. (Am. Compl. ¶¶ 4, 6–7 [ECF No. 1-2].) In 2019, Lawton underwent surgery to have a tumor at the base of his brain removed, causing significant hearing loss and requiring Lawton to use hearing aids. (*Id.* ¶ 10.) Lawton notified Volvo of his condition, and he continued performing his supervisory duties. (*Id.* ¶ 11–12.) In January 2023, Lawton began serving as a Production Supervisor on the Chassis line. In that role, he supervised and coordinated the daily activities of 40 to 50 hourly production workers. (*Id.* ¶ 15, 17.)

In September 2023, Lawton received training from the Volvo legal department on new legal developments. (*Id.* ¶ 18.) During that training, Lawton approached Robert Lippitt, who led the training about pregnancy-related accommodations. (*Id.*) Lawton believed that his direct supervisor, Jason Wamsley, was targeting one of his team members improperly based on pregnancy. (*Id.*) Based on the training, Lawton believed that Volvo needed to provide pregnancy-related accommodations to that team member to comply with the law. (*Id.* ¶ 19.) The pregnant team member's duties required her to bend and squat under the rail to install air lines approximately 30 times per day. (*Id.* ¶ 20.) As her pregnancy progressed, she required a chair or stool so she could sit or lean between installations. (*Id.*) Lawton ensured that the team member had a chair at her workstation. (*Id.* ¶ 21.) But Lawton claims that Wamsley instructed him to discontinue the pregnancy-related accommodation. (*Id.* ¶ 22.) At Wamsley's direction,

Lawton removed the chair but ensured that another chair was placed at the pregnant team member's workstation. (*Id.*) Lawton believed that Wamsley's decision to deny the pregnancy-related accommodations was illegal and communicated to HR/Labor Relations to challenge Wamsley's action. (*Id.* ¶ 23.) Lawton copied Wamsley on the emails he sent to HR about the issue. (*Id.*) Despite Lawton's efforts, the pregnant team member never received proper accommodations and was forced to go on maternity leave earlier than she had planned. (*Id.*)

Separately, Lawton struggled in the Chassis line because it is the loudest area in the plant and he could not use hearing protection and still hear adequately, which impacted his ability to communicate. (*Id.* ¶¶ 24–25.) In January 2024, after working on the Chassis line for about one year, Lawton asked to be moved to a quieter area of the plant. (*Id.* ¶ 26.) Volvo regularly shifted supervisory personnel, and Lawton himself had been transferred approximately eight times in 13 years. (*Id.* ¶ 27.) This time, however, Volvo refused Lawton's request. (*Id.* ¶ 28.) Instead, he was called into multiple meetings with Wamsley and others and was told to go on disability. (*Id.* ¶ 29.) Lawton refused and provided documentation from medical providers that he was fit for duty. (*Id.* ¶¶ 29–31.) Thereafter, Lawton returned to work on the Chassis line without any further discussion regarding his accommodation request. (*Id.* ¶ 32.)

Approximately 10 days after returning to work on the Chassis line, Lawton was placed on a Plan of Improvement ("PIP") for the first time in his career. (*Id.* ¶ 33.) A series of meetings followed, where Lawton was provided with contradictory information regarding documentation and assigned voluminous busy work. (*Id.* ¶¶ 35–38.) On April 3, 2024, Volvo terminated Lawton's employment. He alleges that Volvo cited inconsistent reasons for the

termination, stating in one meeting that it was for failing to improve on the PIP, but later representing that it was due to a "Work Force Reduction." (*Id.* ¶ 39.) Lawton alleges that Volvo's placing him on the PIP and ultimately terminating his employment were acts of retaliation for reporting and opposing the failure to provide required pregnancy-related accommodations for a team member and for requesting accommodations for his own disability. (*Id.* ¶¶ 33, 39.)

Lawton timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights on August 7, 2024. (*Id.* ¶ 46.) Lawton requested a Notice of Right to Sue on August 7, 2025, and received a Dismissal and Notice of Rights from the EEOC dated August 13, 2025. (*Id.*; *see also id.* Ex. A.) On January 7, 2025, Lawton filed a complaint in the Pulaski County Circuit Court, and on October 28, 2025, Lawton moved to file an amended complaint. (Not. Removal ¶¶ 1–2.) The circuit court granted the motion on November 7, 2025, and deemed the amended complaint filed on that date. On January 20, 2026, Volvo filed a notice of removal to this court. (*See* Not. Removal [ECF No. 1].)

Lawton brought ten causes of action against Volvo in his amended complaint, seven of which pertain to his own disability[1] and the remaining three pertaining to his opposition to

---

[1] These causes of action consist of Count II, discrimination in violation of the Americans with Disabilities Act ("ADA"); Count III, discrimination in violation of the Virginia Human Rights Act ("VHRA"); Count IV, failure to accommodate in violation of the ADA; Count V, failure to accommodate in violation of the VHRA; Count VI, interference in violation of the ADA; Count VII, retaliation in violation of the ADA; and Count VIII, retaliation in violation of the VHRA (based on Lawton's disability). Volvo does not challenge any of these claims at this stage.

the denial of pregnancy-related accommodations for his team member.[2] On February 3, 2026,

Volvo filed a partial motion to dismiss, seeking dismissal only on Count X: retaliation in

violation of the Virginia Human Rights Act (the "VHRA") arising from his opposition to

Volvo's failure to provide pregnancy accommodations to his team member. (Mot. Dismiss

[ECF No. 9], Br. in Supp. Mot. Dismiss [ECF No. 10].) Lawton filed a response (Br. in Opp.

Mot. Dismiss [ECF No. 19]), and Volvo replied (Reply Br. [ECF No. 24]), making this matter

ripe for disposition.[3]

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards*

*v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While a complaint does not need "detailed factual allegations," complaints merely offering

"labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a

formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original)

(quoting *Twombly*, 550 U.S. at 555, 557). At bottom, the court "must accept all well-pleaded

---

[2] These causes of action consist of Count I, retaliation in violation of Virginia Code § 40.1-27.3; Count IX, retaliation in violation of the Pregnant Workers Fairness Act ("PWFA"); and Count X, retaliation in violation of the VHRA (opposing failure to provide pregnancy-related accommodation). Volvo does not challenge Counts I or IX at this stage.

[3] Neither party requested oral argument, and the court does not believe that oral argument would aid in determining the discrete legal issue presented in the motion.

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

### III.    ANALYSIS

Lawton cites Virginia Code § 2.2-3909 in support of Count X. (*See* Am. Compl. ¶ 162.) Adopted by the General Assembly in 2020, this statute prohibits employers from: "[r]efus[ing] to make reasonable accommodation to the known limitations of a person related to pregnancy, childbirth, or related medical conditions" absent undue hardship; *"[t]ak[ing] adverse action against an employee who requests or uses a reasonable accommodation[;]"* "[d]eny[ing] employment or promotion opportunities to an . . . employee because such employer will be required to make accommodation to the known limitation of such . . . employee related to pregnancy, childbirth, or related medical conditions[;]" and "[r]equir[ing] an employee to take leave if another reasonable accommodation can be provided[.]" Va. Code Ann. § 2.2-3909(B)(1)–(4) (emphasis added). The section also provides that "[a]n employee . . . who has been denied any of the rights afforded under subsection B may bring an action in a general district or circuit court having jurisdiction over the employer that allegedly denied such rights." *Id.* § 2.2-3909(E).

Volvo argues that, under the statutory language, Lawton "lacks standing for alleged opposition activity" because "there is no language to suggest that anyone but the pregnant or new or nursing mother can assert any rights" under Virginia Code § 2.2-3909, particularly in subsection E. (Br. in Supp. Mot. Dismiss at 5–6.) Volvo also notes that the section's federal counterpart—the Pregnant Workers Fairness Act ("PWFA")—contains express language protecting opposition activity: "[n]o person shall discriminate against *any employee* because such employee *has opposed* any act or practice made unlawful by this division[.]" (*Id.* at 6 (quoting 42

- 6 -

U.S.C. § 2000gg-2(f) (emphasis added)).) In response, Lawton invokes another provision within the VHRA, Virginia Code § 2.2-3905(B)(7), which he alleges prohibits discrimination against an employee due to his opposition activity. (Br. in Opp. Mot. Dismiss at 4.) He argues that because he alleged (1) he was employed by Volvo, (2) the refusal to provide pregnancy-related accommodation is prohibited by the VHRA, and (3) he opposed the removal of the accommodation and was retaliated against as a result, he stated a claim for retaliation under § 2.2-3905. (*Id.* at 4–5.) In its reply brief, Volvo argues that, by invoking Virginia Code § 2.2-3905(B)(7), Lawton is attempting to "back door" his way into standing. (Reply Br. at 5.) Particularly, Volvo argues that Lawton is impermissibly amending his complaint because he brought Count X under Virginia Code § 2.2-3909 and did not refer to § 2.2-3905 in his amended complaint. (*Id.*) Additionally, Volvo argues that the "omission of any reference to opposition activity in Virginia Code § 2.2-3909 cannot be ignored." (*Id.* at 5–6.)

As a threshold matter, Lawton's failure to cite to Virginia Code § 2.2-3905 in his amended complaint is not fatal to his claim. Lawton styles Count X as a claim for "retaliation in violation of the VHRA[,]" specifically for "opposing failure to provide pregnancy-related accommodation." (*See* Am. Compl. at 28.) Although he did not explicitly cite to § 2.2-3905 in his amended complaint, he specifically alleged opposition activity under the VHRA, which is a core component of a larger statutory scheme. Lawton is therefore not attempting to alter his claim by discussing a directly applicable VHRA provision in his brief that is not explicitly cited in the amended complaint. He also is not attempting to present new facts or claims. *See, e.g.*, *Graves v. Taylor*, No. 3:19-cv-00033, 2021 WL 2403148, at *4 n.8 (W.D. Va. June 11, 2021) (stating that the plaintiff could not amend his complaint by raising new facts in his opposition

brief); *Zelaya Sorto v. Doe*, No. 5:18-CT-3242-FL, 2020 WL 5709249, at *4 n.6 (E.D.N.C. Sep. 24, 2020) (stating that a "plaintiff cannot amend the complaint by alleging *new claims* in his response brief") (emphasis added)).

Lawton also has the better reading of Virginia Code § 2.2-3905(B)(7). Although Volvo is correct that, unlike the PWFA, Virginia's analogous provision does not explicitly protect opposition activity like Lawton's, the PWFA is a standalone act while Virginia Code § 2.2-3909 is a part of a larger statutory scheme—the VHRA. In construing a statute, the court interprets the words in context "and with a view to their place in the overall statutory scheme." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013) (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001)). At the same time, the court is also "bound by 'the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Groundworks Operations, LLC v. Campbell*, 923 S.E.2d 919, 640 (Va. 2025) (quoting *Boynton v. Kilgore*, 623 S.E.2d 922, 926 (Va. 2006)); *see also Schilling v. Schmidt Baking Co., Inc.*, 876 F.3d 596, 601 (4th Cir. 2017) ("When interpreting a statute, we first consider the plain meaning of the statutory language."). With those core principles in mind, the court turns to the language of Virginia Code § 2.2-3905(B)(7). It provides, in full:

> B. It is an unlawful discriminatory practice for:
> . . .
> 7. (i) An employer to discriminate against any employees or applicants for employment, (ii) an employment agency or a joint apprenticeship committee controlling an apprenticeship or other training program to discriminate against any individual, or (iii) a labor organization to discriminate against any member thereof or applicant for membership because such individual has opposed any practice made an unlawful discriminatory practice by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Va. Code Ann. § 2.2-3905(B)(7). This provision expressly prohibits employers, employment agencies (and similar entities), and labor organizations from discriminating against an individual (*i.e.* an employee, apprentice, applicant, or labor organization member) because of that individual's opposition to a practice that *this chapter*—meaning the VHRA—has rendered unlawful. The provision's plain language, then, protects opposition to any practice deemed unlawful discrimination under any provision in the VHRA, including Virginia Code § 2.2-3909. Therefore, Lawton's opposition to Volvo's failure to provide reasonable pregnancy-related accommodations is protected, and his allegation that he was retaliated against because of this opposition activity is actionable under the VHRA. Adopting Volvo's interpretation, which focuses solely on the language in Virginia Code § 2.2-3909, would require the court to interpret the statutory language in isolation, rather than as a part of the broader statutory scheme that comprises the VHRA. The court declines to do so here.[4]

Accordingly, the court finds that Lawton has standing, under Virginia Code § 2.2-3905(B)(7), to pursue a claim that he was retaliated against for his opposition activity regarding Volvo's failure to provide pregnancy accommodations to his coworker.[5]

---

[4] Volvo also points to § 2.2-3909's repeated use of the pronouns "she" and "her" in its plain language argument that the General Assembly intended that the section apply only to females (and females who are pregnant or post-partum). (Reply Br. at 4.) The court is cautious to assign too much importance to the use of a specific set of pronouns. Additionally, although the Virginia Code provides that "[a] word used in the masculine includes the feminine and neuter" but does not include the vice-versa scenario, *see* Va. Code Ann. § 1-216, that provision was first adopted in the 1919 Code of Virginia (at a time when statutes were written using only masculine pronouns), and its language has not been amended since then. *See* Va. Code Ann. tit. 2, ch. 2 § 5 (1919); *see also* Va. Code Ann. tit. 9, ch. 16 § 17 (1849) ("[A] word importing the masculine gender only, may extend and be applied to females as well as males").

[5] Volvo also argues, for the first time in its reply brief, that Lawton failed to allege a causal connection between his opposition activity and his termination because the temporal gap is too attenuated. (Reply Br. at 6–7.) "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *United States v. Al-Hamdi*, 356 F.3d 564, 572 n.8 (4th Cir. 2004); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 535 (D. Md. 2010). Sometimes, a court may use its discretion to consider such issues

## IV.    CONCLUSION

For the foregoing reasons, Volvo's partial motion to dismiss will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 13th day of May, 2026.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

in appropriate circumstances, such as when the opposing party addressed that particular argument in its opposition brief or had the opportunity to file a sur-reply brief or address the issue at oral argument. *See, e.g.*, *Boone v. Delta Air Lines, Inc.*, No. 4:25-cv-123, 2026 WL 917467, at *2 n.1 (E.D. Va. Apr. 1, 2026); *Snowden v. Prince George's Cnty. Dep't of Corr.*, No. PJM 18-160, 2018 WL 3862253, at *3 n.2 (D. Md. Aug. 14, 2018); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). No such circumstances apply here, and the court will therefore decline to address this argument.